COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

EX PARTE:                                          No. 08-10-00239-CR

§

JOEL DE LOS REYES,                                 Appeal from the

§

                                                   County Court at Law No. 6

§

                                                   of El Paso County, Texas

§

                                                   (TC# 20040C04713)

§

**O P I N I O N**

Joel De Los Reyes appeals the trial court's denial of his application for writ of habeas corpus. In a single issue, Appellant contends he is entitled to relief by writ of habeas corpus, and the trial court erred by denying his application, on the basis that he suffered ineffective assistance of counsel during his original criminal prosecution. By cross-appeal, the State contends that the trial court lacks subject-matter jurisdiction over the case, as Appellant is currently in federal custody. We reverse.

Appellant has been a permanent resident in the United States since 1993. In 1997, he pled guilty to misdemeanor theft. In 2004, he pled guilty to another misdemeanor theft and was sentenced to one day of confinement in the El Paso County Jail and ordered to pay a monetary fine.

Appellant was taken into custody by the Department of Immigration and Customs Enforcement in February of 2010. While in custody at a United States Immigration and

Detention Facility, Appellant filed an application for writ of habeas corpus seeking a new trial for the 2004 theft offense on the basis that his guilty plea was involuntary because his attorney failed to inform him that his plea would lead to deportation.[1]  In support of his application, Appellant submitted two affidavits and a "Memorandum of Law."  In the first affidavit, Appellant stated that he pled guilty to the 2004 misdemeanor on the advice of his attorney and that his attorney did not advise him that the plea would lead to deportation.  In the second affidavit, Appellant's attorney testified that he did, in fact, advise Appellant to plead guilty to the offense, and that he did so without knowledge of Appellant's prior theft conviction.  The affidavit includes counsel's admission that he did not properly investigate and review Appellant's history, and that had he done a more thorough review he would not have advised Appellant to plead guilty.  Counsel also stated that he did not properly advise Appellant of the consequences of his plea.  He concluded that Appellant is facing deportation as a "direct result" of his failure to advise Appellant of the potential impact on his immigration status.

Although not cited directly in his memorandum of law, Appellant also submitted excerpts from the United States Supreme Court's recent decision in *Padilla v. Kentucky*, -- U.S.--, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  In *Padilla*, the Court concluded that counsel engaged in deficient performance under the *Strickland v. Washington* standard by failing to advise his client that a guilty plea made him subject to deportation.  *Padilla*, --U.S.--, 130 S.Ct. at 1483, *citing Strickland v. Washington*, 466 U.S.668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 647 (1984).

In its answer, the State argued Appellant was not entitled to relief by writ of habeas

---

[1] The State responded, in part, by filing a motion to dismiss the application on the basis that the trial court lacked jurisdiction to consider the application because Appellant was in federal custody.

corpus, primarily on the basis that Appellant could not meet his burden to establish ineffective assistance of counsel under *Strickland*, and that Appellant could not rely on the ruling in *Padilla* because the case was decided long after the allegedly deficient performance occurred. The State also argued that Appellant's application should be denied under the doctrine of laches, due to Appellant's unexplained six-year delay in applying for habeas corpus relief.

The trial court heard evidence and argument on the application on July 8, 2010. Appellant's trial counsel was the only witness to testify during the hearing. He reiterated his affidavit testimony and admitted that he did not discuss the possible immigration consequences with Appellant prior to Appellant's guilty plea. He testified, "I did not advise him of any type of immigration consequences or deportation at all." Counsel explained that when he was notified that Appellant was taken into federal custody, he researched the issue further and discovered that although the 2004 misdemeanor theft offense was not sufficient by itself to lead to deportation, the fact that it was actually Appellant's second theft conviction provided grounds for the federal government to remove Appellant from the country. Counsel also testified that Appellant would not have pled guilty if he had known this.

At the close of the hearing, the trial court denied the State's motion to dismiss and denied Appellant's application. During its ruling, the trial court noted that the written plea agreement Appellant signed in 2004 included an admonishment regarding the potential effect on Appellant's immigration status.[2] While recognizing the Supreme Court's ruling in *Padilla*, as

---

[2] The plea agreement that Appellant signed in 2004 included the following admonishment regarding deportation:

> I further understand that in the event I am not a citizen of the U.S.A., my plea of guilty may result in deportation, exclusion from admission to the U.S.A. or denial

well as counsel's testimony, the trial court concluded that the written admonishment was sufficient to give Appellant notice of the consequences of his plea, despite any failure by defense counsel.

On appeal, Appellant raises a single issue in which he contends the trial court's ruling was erroneous under the United States Supreme Court's decision in *Padilla v. Kentucky*. By cross-appeal, the State also raises a single issue, arguing that the case should have been dismissed for lack of subject-matter jurisdiction. Because of its potential impact on this Court's jurisdiction, we will address the State's issue first.

In its cross-appeal, the State reasserts its argument that the trial court lacked jurisdiction over Appellant's application pursuant to Article 11.63 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 11.63 (West 2005); *Ex parte Nguyen*, 31 S.W.3d 815 (Tex.App.--Dallas 2000, orig. proceeding). As a question of law, subject-matter jurisdiction is subject to *de novo* review. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003), *overruled on other grounds, Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007). The statute and case law state that the trial court lacks the authority to issue a writ of habeas corpus to compel the release of an individual from federal custody. *In re State*, 304 S.W.3d 581, 584 (Tex.App.--El Paso 2010, orig. proceeding); *Nguyen*, 31 S.W.3d at 817. Based on the statute and case law, the State argues that since Appellant is being held under the authority of the federal government, the matter is under federal jurisdiction, and it is up to the federal courts to allow the release of an applicant in federal custody. The State concludes that a state trial court has no subject-matter jurisdiction to grant relief because Article 11.63 limits the trial court's authority

of naturalization under federal law.

on the application.

This Court considered this issue on review by petition for writ of mandamus in *In re State*. In our discussion, we noted that the state court did not have authority to compel the federal government to produce the applicant during the habeas proceedings. *In re State*, 304 S.W.3d at 584. We denied the State's petition, however, on the basis that the state court retained jurisdiction to consider, and rule on, the applicant's request for relief regarding his state conviction. *Id*. at 584-85.

Parallel to the facts in *In re State*, although Mr. De Los Reyes is in federal custody, the relief sought in his application for writ of habeas corpus was limited to reversal of his state court conviction and a new trial. The trial court has jurisdiction to consider such an application, and to grant the requested relief if appropriate. *See* TEX.CODE CRIM.PROC.ANN. art. 11.10; *In re State*, 304 S.W.3d at 584. Therefore, the State has not demonstrated that the trial court lacked jurisdiction to consider the writ application, and we deny the State's request to dismiss the application for lack of jurisdiction. The State's cross-issue is overruled.

An applicant seeking relief by writ of habeas corpus must prove his claim by a preponderance of the evidence. *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex.Crim.App. 1997). When reviewing a trial court's ruling on an application for writ of habeas corpus, we view the evidence presented in the light most favorable to the ruling, and we must uphold that ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d at 819. The trial court's fact findings in a habeas proceeding will be afforded almost total deference, particularly when those findings are based on evaluations of credibility and demeanor. *Ex parte White*, 160 S.W.3d 46, 50 (Tex.Crim.App. 2004). To the extent the ultimate resolution of the application turns on an

-5-

application of law, we review the determination *de novo*. *Ex parte Peterson*, 117 S.W.3d at 819.

In Appellant's sole issue on appeal, he contends the trial court erred by denying the application based on the United States Supreme Court's decision in *Padilla*. Before we address Appellant's argument directly, however, we must address the State's contention that *Padilla* is not applicable because the decision was issued approximately six years after Appellant pled guilty to the misdemeanor.

Generally, new rules affecting federal constitutional standards of criminal procedure are only applied in future trials, cases pending on direct review, and federal habeas corpus proceedings. *Ex parte Lave*, 257 S.W.3d 235, 236 (Tex.Crim.App. 2008), *citing Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). As the Court went on to explain, the "*Teague* rule" was crafted with an eye toward the goals of federal habeas proceedings, "not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions." *Danforth v. Minnesota*, 552 U.S. 264, 280-81, 128 S.Ct. 1029, 1041, 169 L.Ed2d 859 (2008). The *Teague* decision itself neither requires nor prohibits state courts from retroactively applying new rules in the area of constitutional criminal procedure. *Ex parte Lave*, 257 S.W.3d at 236-37, *citing Danforth*, 552 U.S. at 265-66, 128 S.Ct. 1032-33. However, the Texas Court of Criminal Appeals has adopted the "*Teague* rule" as the state standard for determining whether a new rule of constitutional criminal procedure will apply retroactively in Texas habeas proceedings. *See Ex parte Lave*, 257 S.W.3d at 237, *citing Ex parte Keith*, 202 S.W.3d 767, 769 (Tex.Crim.App. 2006)(analyzing the retroactivity of *Crawford v. Washington* under the *Teague* rule).

The threshold inquiry under *Teague* is whether the rule that the habeas applicant seeks to

apply retroactively is a "new rule." *See Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1993). In terms of *Teague*, "old rules" are applicable on both direct and collateral review, while the application of "new rules" is limited to cases on direct review, unless the "new rule" falls within one of the *Teague* exceptions. *See Whorton v. Bockting*, 549 U.S. 406, 416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007)(noting that as a "new rule" in terms of *Teague*, the Court's holding in *Crawford v. Washington* could only be applied retroactively for relief by federal writ of habeas corpus if it met one of the *Teague* exceptions). A "new rule" falls within the *Teague* exceptions if: (1) the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe; or, (2) the new rule implicates the fundamental fairness of the trial. *Danforth*, 552 U.S. at 274-75, 128 S.Ct at 1038.

A holding is a "new rule" within the meaning of *Teague* if it breaks new ground, imposes a new obligation on the states or the federal government, or was not dictated by precedent existing at the time the defendant's conviction became final. *Graham*, 506 U.S. at 467, 113 S.Ct. at 897. By comparison, a holding is not a "new rule" if it applies an established law in a new way based on the facts of a particular case. *Stringer v. Black*, 503 U.S. 222, 228-29, 112 S.Ct. 1130, 1135-36, 117 L.Ed.2d 367 (1992). If the holding does not constitute a "new rule" under this standard, the "*Teague* exceptions" do not apply, and the general rule barring retroactive application governs. *See Graham*, 506 U.S. at 467, 113 S.Ct. at 897.

We now turn to the holding in *Padilla*; is it a "new rule," subject to the *Teague* exceptions, or an "old rule" being applied to new circumstances? Thus far, only one other appellate court in Texas has addressed this issue. *See Ex parte Tanklevskaya*, ___ S.W.3d ___, No. 01-10-00627-CR, 2011 WL 2132722 (Tex.App.--Houston [1st Dist.] May 26, 2011, no pet.h.). Faced with

facts nearly identical to the record before us, and after an extensive analysis of the available federal authority, the First District Court of Appeals concluded that the holding in *Padilla* was not a "new rule" in terms of *Teague*, and concluded that it could be applied retroactively for purposes of Texas habeas corpus proceedings.[3] *Id.*, 2011 WL 2132722, at *5-7. Recognizing the Supreme Court's heavy reliance on its decisions regarding ineffective assistance of counsel, particularly *Strickland v. Washington*, our sister court ultimately concluded that the holding in *Padilla* was merely applying the well-settled rules governing claims of ineffective assistance of counsel to a new set of facts. *Id.*, 2011 WL 2132722, at *6-7. Accordingly, the *Padilla* holding was not subject to the *Teague* exceptions and was applicable to a state proceeding on habeas corpus. *Id.*, 2011 WL 2132722, at *7.

We agree that the rule announced in *Padilla* was not a "new rule" as defined by *Teague*, but an instance where the well-established standard for determining claims of ineffective assistance of counsel was applied to a specific circumstance; i.e., counsel's responsibility to inform a non-citizen of the potential impact a guilty plea may have on his or her immigration status. *See Tanklevskaya*, 2011 WL 2132722, at *7. Because *Padilla* does not impose a "new" procedural rule, there is no need to address the *Teague* exceptions, and we agree that the holding can be applied in post-conviction habeas corpus proceedings. *See id.*, 2011 WL 2132722, at *7.

We now turn to Appellant's claim that he was denied his right to effective assistance of counsel by his attorney's admitted failure to inform him that a guilty plea would have a negative

---

[3] As in the case before us, the applicant in *Tanklevskaya* was a legal permanent resident of the United States, who sought a writ of habeas corpus under the *Padilla* decision after her status as a permanent resident was revoked due to a guilty plea. *Ex parte Tanklevskaya*, 2011 WL 2132722, at *1-2.

impact on his status as a permanent resident in the United States. We review ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*. *See Perez v. State*, 310 S.W.3d 890, 892-93 (Tex.Crim.App. 2010). There are two components to the *Strickland* analysis: (1) the defendant must show that counsel's performance was deficient; and, (2) the defendant must demonstrate that the deficient performance prejudiced the defense. *Id*. It is the defendant's burden to establish both prongs by a preponderance of the evidence. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005). A deficient legal performance is one which, based upon "prevailing professional norms," fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d 893. When measuring counsel's performance, the court will consider all the circumstances of the case, and indulge a strong presumption that the representation fell within the wide range of reasonable professional assistance. *Id*. If the defendant establishes a deficient performance under the first prong, he must still demonstrate prejudice. *Id*. To establish prejudice, the defendant must show that counsel's errors were so serious that the defendant was deprived of his right to a fair, reliable trial. *Id*. A defendant satisfies his burden under the second *Strickland* prong by proving that there is a reasonable probability that but for the unprofessional representation, the proceedings would have come to a different result. *Id*.

In *Padilla v. Kentucky*, the United States Supreme Court addressed whether defense counsel's failure to inform his non-citizen client regarding the potential immigration consequences of a guilty plea constituted ineffective assistance of counsel under the *Strickland* standard. *See Padilla*, --U.S. at --, 130 S.Ct. at 1484. The Court concluded that in circumstances where the applicable immigration laws are "succinct and straightforward," the *Strickland* standard requires defense counsel to inform the defendant whether the plea carried with it a risk of

-9-

deportation. *See id.* By the same token, however, the Court recognized that immigration law in the United States is both complex and fluid, and specified that if the law in a particular circumstance was "not succinct and straightforward," defense counsel is only required to advise the defendant that a guilty plea could have adverse consequences in terms of immigration. *See id.,* 130 S.Ct. at 1483. From the Court's discussion it is clear that regardless of the complexity of the immigration law involved, a complete failure by defense counsel to inform or advise a defendant regarding the potential effect on his immigration status constitutes a deficient performance under the first prong of *Strickland*. *See id.* Because this is the undisputed circumstance in which Appellant made his plea, Appellant has met his burden to prove deficient performance without regard to the complexity of the federal law involved, and has satisfied the first *Strickland* prong. *See id.* ___ U.S. at ___, 130 S.Ct. at 1484. We now turn to the issue of prejudice. *See Perez*, 310 S.W.3d 893.

As we discussed above, to establish prejudice, the applicant must prove that there is a "reasonable probability" that, but for counsel's errors, he would not have pled guilty. *Johnson v. State*, 169 S.W.3d 223, 231 (Tex.Crim.App. 2005); *see also Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Deprivation of a trial is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption of prejudice. *Johnson*, 169 S.W.3d at 231. The focus of the prejudice inquiry in this subset of cases is whether the defendant was deprived of a particular proceeding by counsel's deficient performance, not whether the outcome of that proceeding would have been favorable to the defendant. *Id*. Therefore, the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question. *Id*. at 231-32.

After Appellant entered his plea and was convicted of theft in 2004, his trial attorney discovered that Appellant would be deported because the 2004 conviction was his second for theft. Counsel testified that "if the second conviction had not occurred, he would not be deported." This testimony comports with federal immigration law, which requires the deportation of "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial . . . ." 8 U.S.C.A. § 1227(a)(2)(A)(ii)(West 2008); *see also United States v. Esparza-Ponce*, 193 F.3d 1133, 1136 (9th Cir. 1999)(noting that every federal circuit to address the issue "in the context of the immigration laws has concluded that petty theft is a crime involving moral turpitude for purposes of those laws"); *State v. Jimenez*, 987 S.W.2d 886, 887 & n.1 (Tex.Crim.App. 1999)(demonstrating that two theft convictions have made an alien deportable since 1990). Citing a different subsection of this statute, the Court in *Padilla* stated that its "terms . . . are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla*, ___ U.S. at ___, 130 S.Ct. at 1483. Similarly, given the common understanding of the term "moral turpitude," counsel could have easily determined the consequences of two theft convictions from reading the statute. *See id*., __ U.S. at __, 130 S.Ct. at 1483.

Appellant's attorney should have researched the immigration consequences of having two theft convictions and should have advised Appellant accordingly. Instead, he did not provide any advice in this regard. The trial court determined in effect that Appellant was not prejudiced by this deficiency because the 2004 plea papers informed him that the plea "may result in deportation, exclusion from admission to the U.S.A. or denial of naturalization under federal

-11-

law."  However, given the near certainty that Appellant would be deported, the admonishment that the plea "may" result in deportation was not sufficient to alleviate the prejudice arising from counsel's failure to advise Appellant of the plea's immigration consequences.  *See Ex parte Romero*, ___ S.W.3d ___, ___, 2011 WL 3328821, at \*2-3 (Tex.App.--San Antonio Aug. 3, 2011, no pet.h.)(reversing order denying habeas relief where counsel reviewed the court's standard admonishments, including the "possible" immigration consequences, with the appellant, because counsel had a duty to inform the appellant of "the specific consequences of his plea . . . where the law made deportation a virtual certainty"); *Tanklevskaya*, ___ S.W.3d at ___, 2011 WL 2132722, at \*7, \*11 (holding that the trial court's admonishment that the appellant's plea "may result in deportation, exclusion from admission to this country, or denial of naturalization under federal law" did "not cure the prejudice arising from plea counsel's failure to inform applicant that, upon pleading guilty, she would be presumptively inadmissible"); *see also Padilla*, ___ U.S. at ___, 130 S.Ct. at 1480 ("Under contemporary law, if a noncitizen has committed a removable offense after . . . 1996 . . . his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses.").

Appellant's sole issue is sustained, the trial court's order is reversed, and habeas corpus relief is granted.


August 31, 2011
                                        DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.


-12-

(Publish)