Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS









EX PARTE: JUAN CARPIO-CRUZ

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-10-00240-CR

Appeal from the

Criminal District Court No. 1
of El Paso County, Texas 
 
(TC# 20090D02854-DCR-1)



 

 

 




O P I N I O N

            Juan Carpio-Cruz filed a petition for writ of habeas corpus, asserting that he was not told 
that pleading guilty to a drug offense would cause him to be deported. The trial court granted
habeas relief, and the State appeals. We affirm.
Factual and Procedural Background
            In May 2009, Carpio was arrested for driving while intoxicated and possession of
cocaine.


 He was subsequently indicted for possessing less than one gram of cocaine, a state jail
felony. Through his retained counsel, Carpio entered into a plea bargain with the State on the
possession case. In exchange for his guilty plea, the State agreed to prosecute the case as a class
A misdemeanor and to recommend that he receive eleven months of deferred adjudication
probation. The plea papers included the following admonishment: “If you are not a citizen of
the United States, by pleading guilty . . . to this offense you may be deported, excluded from
future admission into the United States, or denied naturalization under Federal Law.” Carpio
signed this admonishment under the statement, “I have read this page and understand the
contents.” At the plea hearing in November 2009, Carpio told the court that his attorney had read
the plea papers to him in Spanish, that he understood the papers, and that counsel had answered
all of his questions. The court accepted Carpio’s guilty plea and granted him deferred
adjudication pursuant to the plea bargain. In December 2009, Carpio’s attorney negotiated a plea
bargain in the DWI case, allowing him to plead guilty in exchange for a period of probation to
run concurrent with his probation in the possession case.
            In May 2010, a new attorney filed a petition for writ of habeas corpus on Carpio’s behalf. 
The petition alleged that Carpio is not a United States citizen and that, as a result of his guilty
plea in the possession case, he had been detained and ordered to be deported. Carpio argued that
his plea counsel was ineffective because she failed to advise him that his guilty plea would lead
to his deportation.
            Orlando Mondragon, an attorney who specializes in immigration and criminal law,
testified at the hearing on the habeas petition. He indicated that an immigrant who is convicted
of either misdemeanor or felony cocaine possession is deportable. An order of deferred
adjudication is considered a conviction for immigration purposes. Moreover, an alien who is
placed in immigration detention and who has a drug conviction is not eligible for bond unless the
drug conviction occurred before 1998.
            Mondragon described how he would handle a case in which his client was charged with a
deportable crime, such as cocaine possession, and a non-deportable crime, such as DWI. In that
situation, Mondragon would attempt to negotiate a plea bargain under which the client agreed to
serve the maximum sentence for the DWI in exchange for dismissal of the deportable offense. If
the prosecution would not agree to dismiss the deportable offense, he would advise the client that
if he pleads guilty “for sure you are going to be deported.” However, Mondragon also testified
that before March 2010, attorneys were not required to advise their clients about the possibility of
deportation because deportation was considered a collateral consequence of a conviction.
            Finally, Mondragon discussed the requirements for “cancellation of removal.”


 To be
eligible for this relief, an alien must have lived in this country for at least seven years and must
have been a lawful permanent resident for at least five years before the offense was committed. 
If an immigrant pleads guilty to cocaine possession and does not meet these requirements, “he
would be deported and inadmissible for life.” “[T]here’s no relief, there’s nothing you could do.
Once he pleads or he gets convicted, there’s nothing -- he will get deported.” This is not a
“‘could be’ situation, but a ‘would be’ situation.” This has been the law since 1996.
            Carpio’s sworn, written declaration was admitted into evidence without objection. In the
declaration, Carpio stated that when he consulted with his plea counsel, she asked him if he was
a citizen or resident alien, and he responded that he “was a resident with less than five years.” 
He then asked her if he “would have any problems with immigration,” and she told him that he
“might,” but he “would not have any problems” if the possession charge could be reduced from a
felony to a misdemeanor. At the plea hearing, counsel gave him a paper to sign, stating that the
charge had been reduced to a misdemeanor and that he would receive eleven months of
probation. When he again asked her if he would have any problems with immigration, she told
him that “she did not think so.” In conclusion, Carpio stated: “She never did explain to me that
if they found me guilty they would deport me. It’s logical that if she ever told me that I would
not have signed. I would’ve looked for another attorney to represent me and help me fight my
case.”
            An affidavit by Carpio’s wife, Edna Cazares, was also admitted without objection. Her
version of events was consistent with her husband’s. In addition, Cazares averred that if counsel
had explained that the guilty plea would lead to deportation she did not think that Carpio would
have agreed to plead guilty. Instead, “[h]e would have fought the drug charges and asked for a
jury trial.”
            Cazares testified at the habeas hearing. She stated that Carpio told counsel that he had
been a legal resident for less than five years. Counsel did not ask how long Carpio had lawfully
been in the United States before becoming a legal permanent resident. Cazares testified that her
husband told counsel that he did not want to go to jail. Counsel did not tell him that he probably
would have been placed on probation if he had gone to trial or that he would be detained without
bond by the immigration authorities if he entered a guilty plea. At the time of the habeas hearing,
Carpio had been detained at an immigration camp for five months.
            Plea counsel submitted an affidavit and testified at the hearing. In her affidavit, she stated
that she asked Carpio “how long he had been a resident of the United States and he stated about
five years.” She then “advised him that these charges could result in removal.” The district
attorney’s office refused to dismiss the possession charge, but did offer to reduce it to a class A
misdemeanor and to recommend eleven months of deferred adjudication probation. She told
Carpio “that despite the fact the [p]ossession charge would be reduced to a misdemeanor this
could still affect his resident status with immigration” and “he could still face immigration
proceedings.” She denied that she ever told Carpio that he could not be deported for the
possession charge.
            At the hearing, counsel testified that she was familiar with the applicable immigration
statutes. She knew that any drug conviction other than possession of less than thirty grams of
marijuana is a deportable crime. Counsel acknowledged that a conviction for possession of a
controlled substance would “always” result in immigration consequences, yet she only told
Carpio that “he could face immigration consequences.” She did not tell him that he would
certainly be placed in deportation proceedings. She understood that to be eligible for
cancellation of removal, a person must have been a lawful permanent resident for five years
before the date of the arrest. Counsel believed that Carpio was a lawful permanent resident for at
least this amount of time.
            Counsel testified that one of Carpio’s main concerns was going to jail. Therefore, he was
reluctant to take his chances with a trial. Counsel knew that when deportation proceedings result
from a drug crime, the alien is mandatorily detained and cannot be released on bond. She did not
tell Carpio that this would occur.
            The trial court granted the petition for writ of habeas corpus, withdrew Carpio’s guilty
plea, and vacated the deferred adjudication order. In its findings of fact, the court found that
Carpio informed counsel that he was not a United States citizen and had been a lawful permanent
resident for less than five years at the time he was arrested. The court also found that counsel did
not advise Carpio that he “would” be deported if he pled guilty to the cocaine charge, but advised
him only that the guilty plea “could” affect his immigration status. In its conclusions of law, the
court stated that the terms of the relevant immigration statutes are “succinct, clear and explicit”
that Carpio would be deported if he pled guilty to the cocaine charge because he had not been a
lawful permanent resident for at least five years before his arrest and thus was not eligible for
cancellation of removal. The court also determined that counsel’s representation fell below an
objective standard of reasonableness because the immigration statutes are succinct, clear, and
explicit, yet counsel did not investigate Carpio’s immigration status or advise him that he would
be deported if he pled guilty. Finally, the court concluded that there is a reasonable probability
that, but for counsel’s deficient performance, the result of the proceeding would have been
different because Carpio would have declined the probation offer and gone to trial if he had
understood the deportation consequences.



Discussion
Standard of Review
            We review a trial court’s ruling on a habeas petition for an abuse of discretion. See Ex
parte De Los Reyes, No. 08–10–00239–CR, 2011 WL 3841379, at *3 (Tex.App.--El Paso
Aug. 31, 2011, pet. filed). We view the evidence in the light most favorable to the ruling and we
afford almost total deference to the trial court’s factual findings, particularly when those findings
are based on evaluations of credibility and demeanor. Ex parte De Los Reyes, 2011 WL
3841379, at *3. We review the determination of legal issues de novo. See id.; see also Ex parte
Quintana, 346 S.W.3d 681, 684 (Tex.App.--El Paso 2009, pet. ref’d). We must affirm a trial
court’s ruling on a habeas petition if the ruling is correct based on any legal theory before the
court, regardless of whether some of the reasons given by the court appear to be faulty. Ex parte
Pipkin, 935 S.W.2d 213, 215 n.2 (Tex.App.--Amarillo 1996, pet. ref’d).
            To be entitled to habeas relief on the basis of ineffective assistance of counsel, a
petitioner must prove by a preponderance of the evidence that counsel’s performance was
deficient and that he was prejudiced as a result. See Perez v. State, 310 S.W.3d 890, 893
(Tex.Crim.App. 2010); see also Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052,
2064-69, 80 L.Ed.2d 674 (1984). To establish deficient performance, the petitioner must show
that counsel’s performance fell below an objective standard of reasonableness based on
prevailing professional norms. Perez, 310 S.W.3d at 893. To establish prejudice, the petitioner
must show that there is a reasonable probability that, but for counsel’s deficient performance, the
result of the proceeding would have been different. Id.
Padilla v. Kentucky
            Carpio’s ineffectiveness claim is founded upon Padilla v. Kentucky. In that case, Padilla
alleged that his attorney did not properly advise him about the immigration consequences of
pleading guilty to a charge of transporting a large quantity of marijuana. Padilla v. Kentucky,
___ U.S. ___, ___, 130 S.Ct. 1473, 1477-78, 176 L.Ed.2d 284 (2010). Assuming that this
allegation was true, the Kentucky Supreme Court nevertheless refused to grant post-conviction
relief based on its view that deportation is merely a collateral consequence of a conviction. Id. at
1478.
            The United States Supreme Court disagreed. The Court noted that as a result of
legislative changes in 1996, if a noncitizen commits a deportable offense, deportation “is
practically inevitable but for the possible exercise of limited remnants of equitable discretion
vested in the Attorney General to cancel removal for noncitizens convicted of particular classes
of offenses.” Id. at 1480, citing 8 U.S.C. § 1229b. In Padilla’s case, the relevant immigration
statute was 8 U.S.C. § 1227(a)(2)(B)(i). The Court held that the terms of this statute “are
succinct, clear, and explicit in defining the removal consequence for Padilla’s conviction.” Id. at
1483. By simply reading the statute, Padilla’s attorney “could have easily determined” that his
guilty plea would make him subject to deportation, because the statute “specifically commands
removal for all controlled substances convictions except for the most trivial of marijuana
possession offenses.” Id. The Court added, however, that there will be many situations in which
the deportation consequences of a particular plea are unclear. In those situations, counsel “need
do no more than advise a noncitizen client that pending criminal charges may carry a risk of
adverse immigration consequences.” Id.
The State’s Arguments Regarding Deficient Performance
            The State asserts that Padilla created a new rule that should not be applied retroactively
to cases on collateral review. After the State submitted its brief, we held in another case that
Padilla is retroactive. See Ex Parte De Los Reyes, 2011 WL 3841379, at *3-5. We therefore
reject the State’s assertion.
            The State also points out that counsel’s performance must be measured by the law that
was in effect when the representation was provided. When Carpio pled guilty, an attorney’s
failure to give advice regarding deportation was not considered to be ineffective assistance. Like
the Kentucky Supreme Court, our Court of Criminal Appeals has held that deportation is a
collateral consequence of a guilty plea and that attorneys need not inform their clients about
collateral consequences. See State v. Jimenez, 987 S.W.2d 886, 888-89 (Tex.Crim.App. 1999);
Ex parte Morrow, 952 S.W.2d 530, 537 (Tex.Crim.App. 1997); see also Perez v. State, 31
S.W.3d 365, 368 (Tex.App.--San Antonio 2000, no pet.)(“Deportation is a collateral
consequence of a guilty plea, and trial counsel’s failure to advise Perez of the likelihood of
deportation does not rise to the level of constitutionally ineffective assistance of counsel.”).
            The Supreme Court has stated that the effectiveness of representation must be “viewed as
of the time of counsel’s conduct.” Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. Similarly, the
Court of Criminal Appeals has stated that “counsel’s performance will be measured against the
state of the law in effect during the time of trial . . . .” Ex parte Welch, 981 S.W.2d 183, 184
(Tex.Crim.App. 1998). An attorney who relies on contemporaneous judicial opinions in
assessing the validity of a legal proposition will not be deemed deficient if the law subsequently
changes, because “a bar card does not come with a crystal ball attached.” Ex parte Chandler,
182 S.W.3d 350, 358-59 (Tex.Crim.App. 2005). Citing these cases, the State argues that
Carpio’s counsel was not deficient because the failure to advise a client about deportation was
not considered deficient under pre-Padilla law.
            The Third Circuit Court of Appeals has rejected this argument. See United States v.
Orocio, 645 F.3d 630, 642 (3rd Cir. 2011). The court explained:
We find unpersuasive the government’s argument that, because Strickland
measures counsel’s performance ‘on the facts of the particular case viewed as of
the time of counsel's conduct,’ Mr. Orocio’s claim should fail because it was not
reasonable to expect his attorney, in 2004, to predict a Supreme Court decision
nearly six years later. This argument misses the mark. His attorney is not alleged
to be deficient because he failed to predict the Padilla decision--he is alleged to be
deficient because he did not measure up to prevailing professional norms
demanded of counsel at the plea stage as required by Strickland and its progeny.

Orocio, 645 F.3d 642 [Footnote omitted].

            The Third Circuit’s approach is consistent with the Texas cases cited by the State. In the
statements quoted above, the court was referring to the substantive law governing a client’s
situation, not the law governing ineffective assistance claims. Chandler concerned the issue of
whether a prior conviction is final for enhancement purposes. The court held that the law on that
issue was unsettled at the time of the defendant’s trial and that his attorney was not deficient in
failing to predict how the court would ultimately resolve the issue three years later. See
Chandler, 182 S.W.3d at 357-59. But the court noted that “[i]gnorance of well-defined general
laws, statutes and legal propositions is not excusable . . . .” Id. at 358. In Welch, counsel did not
file an application for probation because he mistakenly believed that his client was not eligible
for probation. 981 S.W.2d at 184-85. In contrast with Chandler, the court held that the attorney
was deficient because it should have been evident to him that his client was eligible for probation
based on the plain language of the applicable statute. Id. at 185.
            Here, Carpio asserts that the immigration consequences were well defined and that it
should have been evident to his counsel that he would be deported as a result of his guilty plea. 
If these assertions are correct, he is entitled to relief pursuant to Strickland, Chandler, and Welch.
            The State next argues that the advice given by Carpio’s attorney was sufficient under
Padilla. According to the State, “Padilla did not impose a duty on defense counsel to
affirmatively advise a non-citizen client that he would or would not be deported.” Instead,
counsel must only inform her client that a guilty plea carries a risk of deportation. Since Carpio’s
attorney testified, and the trial court found, that she advised him that his plea could affect his
immigration status, the State argues that counsel complied with Padilla.
            The State relies on the following quotation to support its argument: “[W]e now hold that
counsel must inform her client whether his plea carries a risk of deportation.” Padilla, 130 S.Ct.
at 1486. This quotation is taken out of context. At another point in the opinion, the Court stated,
“When the law is not succinct and straightforward . . . a criminal defense attorney need do no
more than advise a noncitizen client that pending criminal charges may carry a risk of adverse
immigration consequences. But when the deportation consequence is truly clear . . . the duty to
give correct advice is equally clear.” Id. at 1483 [Footnote omitted]. Elsewhere the Court stated,
“We agree with Padilla that constitutionally competent counsel would have advised him that his
conviction for drug distribution made him subject to automatic deportation.” Id. at 1478. Thus,
the resolution of an ineffective assistance claim under Padilla depends on whether the applicable
law is succinct and straightforward. If the law is not succinct and straightforward, the attorney
can comply with Padilla by simply advising her client of the risk of deportation. But if the law is
succinct and straightforward, the attorney must tell her client what the immigration consequences
of a plea will be. See Ex parte De Los Reyes, 2011 WL 3841379, at *6 (holding that an
“admonishment that the plea ‘may’ result in deportation” is insufficient under Padilla when the
defendant’s deportation is a “near certainty”).
            The trial court concluded that the relevant immigration statutes are “succinct, clear and
explicit” in requiring Carpio’s deportation once he entered his guilty plea. The State does not
challenge this conclusion. Such a challenge would fail in any event. One of the statutes
provides, “Any alien who at any time after admission has been convicted of a violation of . . . any
law or regulation of a State . . . relating to a controlled substance . . . other than a single offense
involving possession for one’s own use of 30 grams or less of marijuana, is deportable.” 8
U.S.C. § 1227(a)(2)(B)(i). This is the very statute that the Supreme Court described as “succinct,
clear, and explicit” in Padilla. 130 S.Ct. at 1483. As the Court noted, the statute “specifically
commands removal for all controlled substances convictions except for the most trivial of
marijuana possession offenses.” Id. An order of deferred adjudication is a conviction for
purposes of this statute. See 8 U.S.C. § 1101(a)(48); Moosa v. I.N.S., 171 F.3d 994, 1005-06 (5th
Cir. 1999).
            The other applicable law in this case is the cancellation of removal statute. That statute
allows the attorney general to call off an alien’s deportation if the alien has been lawfully
admitted for permanent residence for at least five years, has resided in the United States
continuously for seven years after having been admitted in any status, and has not been convicted
of any aggravated felony. 8 U.S.C. § 1229b(a). The trial court found that both Carpio and his
wife told his attorney that he had been a permanent resident for less than five years, so he would
not qualify for cancellation of removal. He also would not qualify for cancellation because he
had not been lawfully admitted for seven years. Cazares testified that counsel did not ask Carpio
how long he had resided in the United States in any status.
            Counsel testified that she was aware of and understood all of these statutes, yet she only
advised Carpio that his guilty plea “could” result in removal and he “could” face immigration
consequences. Because Carpio’s deportation was “practically inevitable,” this advice was
deficient. See Padilla, 130 S.Ct. at 1480; Ex parte De Los Reyes, 2011 WL 3841379, at *6; see
also Salazar v. State, 2011 WL 4056283, at *3 (Tex.App.--Eastland Aug. 31, 2011, no pet.
h.)(“[T]he correct advice, which was that the plea of guilty would result in certain deportation,
was not given. Both the terms ‘likelihood’ and ‘possibility’ leave open the hope that deportation
might not occur.”); Ex parte Romero, 2011 WL 3328821, at *2 (Tex.App.--San Antonio Aug. 3,
2011, no pet.)(“Because trial counsel only informed Romero about ‘possible’ immigration
consequences where the law made deportation a virtual certainty, counsel’s performance was
deficient.”).
The State’s Arguments Regarding Prejudice
            The State argues that even if counsel was deficient, Carpio’s habeas petition does not 
plead a cognizable type of prejudice. The State points out that Carpio had the burden of pleading
and proving facts showing his entitlement to habeas relief. See Ex parte Maldonado, 688 S.W.2d
114, 116 (Tex.Crim.App. 1985). To establish prejudice in the guilty plea context, a habeas
petitioner must show a reasonable probability that, but for counsel’s deficient performance, he
would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474
U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Ex parte Niswanger, 335 S.W.3d
611, 615 (Tex.Crim.App. 2011). A reasonable probability is a probability sufficient to
undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Ex parte
Niswanger, 335 S.W.3d at 615 n.7.
            Carpio’s habeas petition does not state that he would have pled not guilty if he had known
that he would be deported. The petition only states that he was prejudiced because his
deportation will cause harsh consequences. Since the petition does not say that Carpio would
have pled not guilty, the State asks us to overrule the trial court’s conclusion that counsel’s
deficient performance prejudiced Carpio.
            In one of the cases cited by the State, the Court of Criminal Appeals determined that a
habeas petition failed to allege facts that would entitle the petitioner to relief. The court
dismissed the petition without prejudice to the petitioner’s “right to replead and support this
allegation with adequate reasoning, argument and testimonial and recorded evidence . . . .” 
Maldonado, 688 S.W.2d at 116. Thus, in this case, the trial court might have been justified in
entering a dismissal without prejudice for failure to allege the correct type of prejudice. But
instead of doing that, the court heard evidence on, and granted, Carpio’s petition. Considering
these circumstances, we will base our prejudice inquiry on the evidence presented rather than the
allegations in the petition.



            In his affidavit, which was attached to the petition, Carpio stated that counsel did not tell
him that he would be deported, and if she had told him that, “[i]t’s logical . . . that I would not
have signed.” He claimed, “I would’ve looked for another attorney to represent me and help me
fight my case.” Although this suggests that Carpio would have demanded a trial, the State argues
that Carpio’s other actions belie this interpretation of the affidavit.
            Carpio filed a motion to bifurcate the habeas proceedings so that there would be one
hearing on deficient performance and then, if the court ruled in his favor on that issue, there
would be a second hearing on prejudice. He asserted that if the court found in his favor on
deficient performance, the parties would then have an opportunity to negotiate a plea bargain that
would not require his deportation. According to the State, this motion indicates that by “fight my
case,” Carpio meant “arrange a better plea agreement,” not “demand a jury trial.” Furthermore,
his trial counsel testified that Carpio never told her that he was innocent or expressed a desire for
a jury trial.
            The motion to bifurcate demonstrates that Carpio places great importance on not being
deported. This is consistent with the evidence submitted at the habeas hearing. The fact that he 
was open to a plea bargain that would preclude his deportation does not negate a finding that he
would have taken his chances at trial instead of entering a plea that guaranteed his deportation.
            Nor do we believe that his failure to declare his innocence and to demand a trial are
dispositive. Counsel testified that Carpio strongly wished to avoid being incarcerated. She
presented him with a plea bargain that would seemingly ensure his freedom. It is not surprising
that Carpio would follow counsel’s advice to accept this bargain if he did not realize that the plea
would result in deportation.



            The State next argues that the trial court applied the wrong prejudice standard. In its
conclusions of law regarding prejudice, the court stated that Carpio “was deprived of the
opportunity for a reasonable decision maker to exercise discretion in his favor” and the court
referred to the lost opportunity to “seek an immigration safe plea.” The State argues that the
clear import of these statements is that Carpio was prejudiced by his inability to secure a more
favorable plea bargain.
            The State fails to note that the court also stated in its conclusions of law that Carpio
“would have declined the probation offer and taken the case to trial had he known of the certain
immigration consequences of deportation.” This statement clearly articulates the standard that
the State advocates. The court’s other statements are therefore immaterial.
            There is evidence to support the trial court’s conclusion that Carpio would have gone to
trial. In addition to Carpio’s affidavit, which stated that he would have fought the case, his
wife’s affidavit stated that if counsel had told Carpio that his guilty plea would lead to
deportation, “I don’t think he would have signed the guilty papers. He would have fought the
drug charges and asked for a jury trial.” See Ex parte Moody, 991 S.W.2d 856, 858
(Tex.Crim.App. 1999)(relying on a third party’s statement as evidence of the petitioner’s intent).
            In Padilla, the Supreme Court stated that “to obtain relief on this type of claim, a
petitioner must convince the court that a decision to reject the plea bargain would have been
rational under the circumstances.” 130 S.Ct. at 1485. In its last argument regarding prejudice,
the State contends that Carpio failed to establish that rejecting the plea bargain would have been
a rational decision for him.
            The trial court concluded that it would have been rational for Carpio to reject the plea
bargain because he “had nothing to lose by taking his case to trial.” The State asserts that if the
case had gone to trial, Carpio would have been convicted and sentenced up to two years in a state
jail facility, and then would have still faced deportation. Thus, the State argues, he did in fact
have something to lose by taking his case to trial.
            The court’s comment that Carpio had “nothing to lose” is a bit hyperbolic. There are
always risks associated with going to trial. However, Carpio did not have to prove that he would
have prevailed at trial. See Johnson v. State, 169 S.W.3d 223, 231 (Tex.Crim.App. 2005); Ex
parte De Los Reyes, 2011 WL 3841379, at *6. Nor did he have to prove that going to trial was
the most rational decision. There may be more than one reasonable approach to take in a case. 
Carpio’s plea counsel conceded that he probably would have received a probated sentence if he
had been convicted in a trial. In any event, the Padilla Court noted that preserving the right to
remain in the United States may be more important to a defendant than any potential jail
sentence. See 130 S.Ct. at 1483. The trial court did not abuse its discretion in concluding that it
would have been rational for Carpio to reject the plea bargain. See Salazar, 2011 WL 4056283,
at *3 (“It would be perfectly rational to take the chance on acquittal at the risk of a maximum of
two years state jail time and a fine of $10,000 rather than enter into a guilty plea that would result
in certain deportation, separating him from his family and the opportunities that come from being
a legal resident of the United States.”).
The State’s Remaining Arguments
            In addition to the findings regarding deportation, the trial court found that Carpio’s plea
counsel provided deficient representation in other respects. The State asserts that these findings
are “gratuitous,” as well as unsupported by the record and applicable law. Because the trial court
did not abuse its discretion in determining that Carpio established his ineffective assistance claim
regarding deportation, we agree with the State that the other findings are gratuitous. 
Accordingly, it is not necessary to address the State’s arguments regarding these findings.
Conclusion
            The trial court’s order granting habeas relief is affirmed.


November 9, 2011
CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)