IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1457-11






EX PARTE JOEL DE LOS REYES, Applicant








ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


 EL PASO COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, P.J.,
and Price, Johnson, Keasler, Cochran, and Alcala, JJ., joined. Womack, J.,
concurred. Meyers, J., not participating.


O P I N I O N 


 

 Applicant below, Joel De Los Reyes, filed an application for writ of habeas corpus,
in which he alleged that he received ineffective assistance of counsel because his trial
counsel failed to advise Applicant that he was almost certainly subject to deportation after
he pled guilty to a second crime of moral turpitude. See Padilla v. Kentucky, 130 S. Ct.
1473, 1483 (2010); see also 8 U.S.C. § 1227(a)(2)(A)(ii). The trial court denied the
application, but the El Paso Court of Appeals granted relief, holding that the rule from
Padilla should be applied retroactively and that trial counsel was ineffective under that
rule. Ex parte De Los Reyes, 350 S.W.3d 723, 728-31 (Tex. App.--El Paso 2011). We
granted the State's petition for discretionary review and will reverse the judgment of the
court of appeals because Padilla announced a new rule of constitutional criminal
procedure not applicable to cases pending on collateral review. Chaidez v. United States,
No. 11-820, 2013 U.S. LEXIS 1613 (2013). 

 In 1993, Applicant was admitted to the United States as a permanent legal resident. 
In 1997, Applicant pled guilty to a charge of misdemeanor theft. On October 25, 2004,
he entered a guilty plea to a second charge of misdemeanor theft and was sentenced to
one day of confinement in the El Paso County Jail and ordered to pay a fine and court
costs. See Tex. Penal Code § 31.03(a). The plea document signed by Applicant
admonished him as follows, in pertinent part: "I further understand that in the event I am
not a citizen of the U.S.A., my plea of guilty may result in deportation, exclusion from
admission to the U.S.A. or denial of naturalization under federal law." 

 Applicant neither filed a timely motion for new trial in the trial court nor filed a
direct appeal. See Tex. R. App. P. 26.2. Because Applicant failed to file a direct appeal
to this Court, he was ineligible to file a petition for a writ of certiorari, (1) and his conviction
became final on December 10, 2004. See Tex. R. App. P. 4.1. According to the
Immigration and Nationality Act, "[a]ny alien who at any time after admission is
convicted of two or more crimes involving moral turpitude, not arising out of a single
scheme of criminal misconduct, regardless of whether confined therefor and regardless of
whether the convictions were in a single trial, is deportable." See 8 U.S.C.
§ 1227(a)(2)(A)(ii). Because theft is a crime of moral turpitude, (2) Applicant was eligible
to be deported when his second theft conviction became final. Consequently, Applicant
was given notice of deportation and taken into custody by the Department of Immigration
and Customs Enforcement in February of 2010. (3) 

 The following month, on March 31, 2010, the Supreme Court issued its opinion in
Padilla v. Kentucky, 130 S. Ct. 1473. In Padilla, the defendant argued that his trial
counsel failed to advise him of deportation consequences before he entered a guilty plea
and that he would have gone to trial had he received that advice. The Supreme Court
began by rejecting the Kentucky Supreme Court's holding that a defendant's Sixth
Amendment right to effective counsel does not extend to the collateral consequences of a
defendant's guilty plea. The Supreme Court determined that "[t]he collateral versus
direct distinction is . . . ill-suited to evaluating a Strickland[ (4)] claim concerning the
specific risk of deportation" and, thus, "Strickland applies to Padilla's claim." Id. at
1482. Then, in its Strickland application, the Court held that defense attorneys must
advise non-citizen clients about the deportation risks of a guilty plea. Id. (5)

 On May 11, 2010, while in custody at a United States Immigration and Detention
Facility, Applicant filed an application for writ of habeas corpus seeking a new trial for
the 2004 theft offense. He argued, in part, that his guilty plea was involuntary because
trial counsel failed to inform him that his plea would lead to deportation. (6)
 See Padilla,
130 S. Ct. 1473. On June 16, 2010, Applicant filed an amended application for writ of
habeas corpus, which contained a memorandum of law and two affidavits (one from
Applicant and one from his trial counsel). Applicant stated in his affidavit that his
attorney did not advise him that he would face deportation by pleading guilty to another
theft charge. Similarly, trial counsel stated in his affidavit that he did not properly review
the immigration consequences, and Applicant's deportation is a direct result of his failure
to properly advise his client as to the outcome and consequences of a plea. On June 30,
2010, the State filed its answer to the amended writ application. The State argued, in part,
that Padilla did not apply retroactively to the writ application because the conviction
became final before Padilla was issued.

 On July 8, 2010, the trial court heard evidence and argument on Applicant's writ
application. Applicant's trial counsel was the only witness to testify during the hearing. 
Trial counsel reiterated his affidavit testimony that he did not discuss the possible
immigration consequences with Applicant prior to the guilty plea. On cross-examination,
however, trial counsel stated that it is part of his regular practice to review the plea papers
with his clients. At the close of the hearing, the trial court denied the instant application. 
The trial court stated that, although similar to the instant case, Padilla differed in that the
issue before the Supreme Court was the conduct and the advice that counsel gave or
failed to give to the defendant. The trial court noted that the written plea agreement
signed by Applicant in 2004 included an admonishment regarding the potential effect on
Applicant's immigration status. Thus, the trial court held that, even if there was a failure
by defense counsel to notify Applicant of the immigration consequences of his plea, the
written admonishment was sufficient to give Applicant notice that a plea of guilty could
have resulted in deportation.

 On direct appeal, the El Paso Court of Appeals reversed the trial court's ruling. De
Los Reyes, 350 S.W.3d 723. The court of appeals initially held that the rule announced in
Padilla applied retroactively in post-conviction habeas corpus proceedings. Id. at 729. It
reasoned that the Padilla rule "was not a 'new rule' as defined by Teague,[ (7)] but an
instance in which the well-established standard for determining claims of ineffective
assistance of counsel was applied to a specific circumstance; i.e., counsel's responsibility
to inform a non-citizen of the potential impact a guilty plea may have on his or her
immigration status." Id. The court then determined that Applicant was denied his right to
effective assistance of counsel because his attorney failed to inform him that a guilty plea
would have a negative impact on his status as a permanent resident in the United States
and this deficient performance prejudiced the defense. Id. at 730-32.

 We granted the State's petition for discretionary review to address the retroactivity
of Padilla. Specifically, the ground for review asks, "Did the Court of Appeals err in
holding that Padilla v. Kentucky, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), applied
retroactively to the collateral review of state convictions that were final when the Padilla
opinion was issued?"

 Under Teague v. Lane, 489 U.S. 288, 301 (1989), the retroactivity of criminal-
procedure decisions from the Supreme Court turns on whether those decisions are novel. 
Generally, when a "new rule" is announced, a defendant whose conviction is already final
may not benefit from that decision in a habeas or similar proceeding. (8) Id. A case
announces a new rule "when it breaks new ground or imposes a new obligation" on the
government. Id. That is, "a case announces a new rule if the result was not dictated by a
precedent existing at the time the defendant's conviction became final." Id.

 Neither the trial court nor the court of appeals had the benefit of the recent opinion
of Chaidez v. United States, 2013 U.S. LEXIS 1613 (2013), in which the United States
Supreme Court explicitly held that Padilla announced a new rule and, thus, does not
apply retroactively to cases already final on direct review. Applying Teague, the Supreme
Court explained that Padilla did more than simply apply Strickland's general standard to
a set of facts. Id. at *11-12. Rather, before applying the two-step Strickland analysis,
Padilla first considered the threshold question of whether advice about deportation was
"'categorically removed' from the scope of the Sixth Amendment right to counsel
because it involved only a 'collateral consequence' of conviction, rather than a
component of a criminal sentence." Id. at *12. In other words, "prior to asking how the
Strickland test applied, Padilla asked whether that test applied." Id. 

 That threshold question had come to the Court unsettled, as Hill v. Lockhart, 474
U.S. 52 (1985), had explicitly left open the question of whether the Sixth Amendment
right extends to collateral consequences. Chaidez, 2013 U.S. LEXIS 1613, at *18-19. 
Consequently, when the Supreme Court handed down Padilla and held that the Strickland
analysis applies to claims concerning the specific risk of deportation, it answered a
question about the Sixth Amendment's reach that had not previously been decided. In
doing so, it broke new ground and imposed a new obligation. Id. (citing Teague, 489
U.S. at 301). Therefore, because Padilla imposed a "new rule" of constitutional criminal
procedure, Teague provides that a defendant whose conviction was already final at the
time that Padilla was handed down may not benefit from that decision in a habeas or
similar proceeding. Teague, 489 U.S. at 301; see Chaidez, 2013 U.S. LEXIS 1613, at
*29.

 We recognize that we could accord retroactive effect to Padilla as a matter of state
habeas law. See Danforth v. Minnesota, 552 U.S. 264 (2008) (holding that Teague does
not constrain "the authority of state courts to give broader effect to new rules of criminal
procedure than is required by that opinion"). But we decline to do so. We adhere to the
retroactivity analysis in Chaidez and its holding that Padilla does not apply retroactively.
This Court follows Teague as a general matter of state habeas practice, (9) and this case does
not present us a reason to deviate here.

 Turning to the case before us, Applicant cannot benefit from the retroactive
application of Padilla. Applicant's second theft conviction became final on December
10, 2004. See Tex. R. App. P. 4.1. The Supreme Court announced its decision in Padilla
on March 31, 2010. Under Chaidez, "defendants whose convictions became final prior to
Padilla . . . cannot benefit from its holding." See Chaidez, 2013 U.S. LEXIS 1613, at
*29. Therefore, Applicant may not rely on Padilla in arguing that he was denied effective
assistance of counsel.

 Because the rule from Padilla does not apply retroactively to cases already final on
direct review, we will reverse the judgment of the court of appeals, and we reinstate the
order of the trial court. This Court will not entertain a motion for rehearing.

 

Delivered: March 20, 2013

Published

 
1. See Sup. Ct. R. 13 (allowing a defendant to file a petition for a writ of certiorari if he is
appealing the refusal of the state court of last resort to hear his case or its judgment affirming his
conviction).
2. Ex parte Rodriguez, 378 S.W.3d 486, 490 (Tex. App.--San Antonio 2012, no. pet.);
LaHood v. State, 171 S.W.3d 613, 620 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd); see
generally Fuentes-Cruz v. Gonzales, 489 F.3d 724, 726 (5th Cir. 2007).
3. According to trial counsel's testimony at the writ hearing, the notice of deportation was
dated February 23, 2010.
4. Strickland v. Washington, 466 U.S. 668 (1984).
5. The Supreme Court decided that counsel had engaged in deficient performance under the
Strickland standard by failing to advise his client that a guilty plea made him subject to
deportation. Padilla, 130 S. Ct. at 1483. The Court remanded the case on the issue of prejudice. 
Id. at 1483-84.
6. The State responded by filing a motion to dismiss the application on the basis that the
trial court lacked jurisdiction to consider the application because Applicant was in federal
custody. When the trial court denied Applicant's writ application, it also denied the State's
motion. On appeal, the State reasserted its argument that the trial court lacked jurisdiction over
Applicant's application, but the court of appeals disagreed, denying the State's request to
dismiss. De Los Reyes, 350 S.W.3d at 727-28.

7. Teague v. Lane, 489 U.S. 288 (1989) (explaining that a new rule for the conduct of
criminal prosecutions is not to be applied retroactively); see also discussion infra.
8. Teague provided two exceptions that, when applicable, allow a defendant to benefit from
a "new rule" on collateral review: (1) "watershed rules of criminal procedure" and (2) rules
placing "conduct beyond the power of the government to proscribe." Teague, 489 U.S. at 311.
9. See, e.g., Ex parte Lave, 257 S.W.3d 235 (Tex. Crim. App. 2008).